**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL C. BAUERLEIN, et al., | No. CIV 04-1904-PHX-SMM |
| Plaintiffs, | **ORDER** |
| vs. | |
| EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP.; et al., | |
| Defendants, | |

Pending before the Court is a Motion for Partial Summary Judgment re: Punitive Damages [Doc. No. 51] filed by Defendant Equity Residential Properties Management Corporation ("Equity"). Plaintiffs, Michael Bauerlein and Shannon Bauerlein, oppose this motion.[1] After considering the arguments raised in the parties' briefs and asserted at oral argument, the Court issues the following Memorandum of Decision and Order.

## **BACKGROUND**

This case arises out of the accidental strangulation death of Brooke Bauerlein that resulted from her neck getting caught in the cords of a mini-blind located in an apartment complex maintained by Equity.

---

[1] On September 26, 2005, Plaintiff Shannon Bauerlein joined Plaintiff Michael Bauerlein's Response in Opposition to Equity's motion [Doc. No. 69].

On August 10, 2004, Plaintiffs filed a Complaint in Maricopa County Superior Court. On September 13, 2004, this case was removed from State court under 28 U.S.C. § 1332(a) [Doc. No. 1]. On June 29, 2005, Plaintiffs filed a second amended Complaint [Doc. No. 47] which contains seven counts. Count IV (Negligence), Counts V and VI (Negligent Infliction of Emotional Distress claims by each individual Plaintiff) and Count VII (Punitive Damages) all assert claims against Equity. On August 4, 2005, Equity filed a Motion for Partial Summary Judgment regarding Count VII of Plaintiffs' Second Amended Complaint which seeks punitive damages [Doc. No. 51].

## STANDARD OF REVIEW

Upon motion at any time, a party defending against a claim may move for "partial summary judgment," that is, "summary judgment in the party's favor as to . . . any part thereof." FED. R. CIV. P. 56(b). A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Fed. Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322;

1  see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994).  The moving party
2  need not disprove matters on which the opponent has the burden of proof at trial.  See Celotex,
3  477 U.S. at 323-24.  The party opposing summary judgment "may not rest upon the mere
4  allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that
5  there is a genuine issue for trial."  FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co. v.
6  Zenith Radio, 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044,
7  1049 (9th Cir. 1995).

## DISCUSSION

The Court finds the following material facts are undisputed:

- In September of 1994, the Window Covering Safety Council (the "Council") submitted a Voluntary Corrective Action Plan ("Action Plan") to the U.S. Consumer Product Safety Commission (the "Commission") that detailed the need for a retrofit program to separate the looped cord then commonly associated with mini-blinds into two separate cords.
- In September of 2000, the Council submitted a second Action Plan to the Commission that detailed the need for the industry to adopt product modifications that will place a "stop" or other device on the mini-blinds to prevent the inner cord from being pulled and formed into a loop when the window covering is lowered.
- In 2001, Equity learned of the strangulation hazards associated with corded mini-blinds.
- In October 2001, Equity implemented a program to install doughnuts near the top of the mini-blind cords and to place tassels on the end of the cords to prevent the center cord from being pulled or manipulated in a manner that created a dangerous loop (the "Retrofit Program").
- Prior to the commencement of the Retrofit Program, Stuart Helfman ("Helfman"), the Vice President of Technical Services for the Western Division of Equity, distributed a form letter (the "Form Letter") to the then current tenants of the apartment complex which informed them of the recall announced by the Commission and the Council

and also informed them that Equity employees would be entering each apartment that contained mini-blinds to implement the Retrofit Program.

- The Form Letter also contained the following safety information:

  > Keep window covering cords and chains permanently out of the reach of children.
  > Never place a child's crib within reach of a window blind.
  > Make yourself and all occupants and guests of your apartment familiar with these safety concerns.

- Equity requires its employees to check the mini-blinds for compliance with its safety protocols and requires the maintenance supervisor to personally inspect the apartments before a new tenant moves in.[2]

- Plaintiffs moved into apartment 2082 at La Mariposa Apartments in September of 2002.

- Plaintiffs did not receive the Form Letter provided to the complex tenants in 2001 regarding the potential strangulation hazards associated with mini-blind cords.

- The blinds in Plaintiffs' apartment contained an express warning that stated: "WARNING: Young children can become entangled and strangle in cord or bead loops.  Use safety devices to reduce access or eliminate loops."

- On May 15, 2003, Plaintiffs' daughter died from strangulation in a loop created by multiple blind draw cords entering a single tassel located in an apartment maintained by Equity.

- The mini-blind cord that caused the strangulation death of Plaintiffs' daughter did not conform with Equity's safety protocols,[3] but did contain equipment installed during the Retrofit Program (specifically a doughnut).

The Court finds the only material factual disputes that exist based on the record before it are: 1) whether the mini-blinds were properly retrofitted prior to Plaintiffs' moving

---

[2] Plaintiffs do not dispute that Equity requires these procedures and expects the procedures to be followed every time a new tenant moves into an apartment, Plaintiffs do, however, dispute whether these procedures were followed in this case.

[3] Equity disputes it is at fault for this violation.

- 4 -

into the apartment or whether the mini-blind cords were altered after Plaintiffs were in possession of the apartment; 2) whether Equity's employees inspected and verified the mini-blind cords in Plaintiffs' apartment were completely retrofitted; and 3) whether the warnings placed on the mini-blinds were sufficient to notify Plaintiffs' of the dangers associated with mini-blind cords.[4]

Based on this evidence, Plaintiffs contend Equity's conduct creates an issue of material fact as to whether Equity acted with an evil mind when it "advertised, promoted, rented, labeled and supplied said Apartment with the window blinds in question." (Pl.'s Second Amend. Compl. at 18). Specifically, Plaintiffs argue that Equity's evil mind is evidenced by its failure to provide them with the 2001 Form Letter or an adequate warning regarding the danger mini-blind cords posed to small children. Plaintiffs further argue that Equity's failure to warn is egregious enough to justify punitive damages because: 1) Equity lacked of a reasonable basis to believe that Plaintiffs were aware of such a danger when the moved into the Complex in 2002; 2) Equity knew of and appreciated the danger posed to small children by mini-blind cords at the Complex for nearly two years before the death of Plaintiffs' daughter; and 3) Equity considered the risk of harm significant as evidenced by the issuance of the 2001 Form Letter and the implementation of the Retrofit Program in 2001.

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under Arizona law, "[t]o obtain punitive damages, a plaintiff must prove that 'defendant's evil hand was guided by an evil mind.'" Volz v. Coleman Co., Inc., 748 P.2d 1191, 1194 (Ariz. 1987) (citing Rawlings v. Apodaca, 726 P.2d 565, 578 (Ariz. 1986)). The requisite evil mind may be established in two ways: 1) "defendant intended to injure the plaintiff" or 2) "defendant consciously

---

[4] The Court makes no findings regarding Equity's culpability, or lack thereof; however, for the purpose of addressing this motion for partial summary judgment, the Court will assume that Plaintiffs' factual allegations are true.

- 5 -

pursued a course of conduct knowing that it created a substantial risk of harm to others." Id.; see also Ranburger v. Southern Pac. Transp. Co., 760 P.2d 551, 553 (Ariz. 1988) (stating that an evil mind "may also be inferred when a [d]efendant acts to serve his own interests, consciously disregarding a substantial risk of significant harm to others.").

Plaintiffs must establish that Equity possessed the requisite evil mind by clear and convincing evidence. Thompson v. Better-Bilt Aluminum Products, Co., Inc., 832 P.2d 203, 209 (Ariz. 1992). The Arizona Supreme Court has recognized that motions for summary judgment regarding claims for punitive damages are more complicated given Plaintiffs' more onerous burden of proof and has stated: "a motion...for summary judgment must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence. Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence." Id. at 210-11.

*A. Intent to Injure*

In their Complaint, Plaintiffs originally asserted that Equity intended to injure Plaintiffs' daughter. Plaintiffs, however, failed to put forth evidence supporting this contention. Additionally, based on their filings, Plaintiffs appear to abandon this theory. Instead, Plaintiffs rely on Equity's failure to properly retrofit and/or inspect the mini-blind cords and properly warn Plaintiffs of the dangers these cords pose to small children to support their claim for punitive damages. Thus, the Court finds that Plaintiffs have failed to put forth evidence from which a reasonable jury could find by clear and convincing evidence that Equity intended to injure Plaintiffs' daughter.

*B. Conscious Disregard*

The Court, however, must still determine whether Equity's alleged conduct creates an issue of fact was to whether a reasonable jury could find by clear and convincing evidence that Equity "was aware of and consciously disregard[ed] a substantial and unjustifiable risk that significant harm would occur." Rawlings, 726 P.2d at 578.

The Arizona Supreme Court has held that the "fact that a manufacturer continues to market a product is not in itself enough to show the evil mind necessary for punitive

- 6 -

damages" and also stated that "this court has expressly rejected awarding punitive damages based on gross negligence or mere reckless disregard of the circumstances." Volz, 748 P.2d at 1194.

In Volz, a young girl was severely burned when a stream of fuel was ejected through a Coleman fuel cap. Id. at 1193. The Arizona Supreme Court found that punitive damages were not appropriate in Volz despite the existence of an internal memorandum drafted in 1963 that acknowledged and discussed the defective design of the fuel cap and Coleman's failure to issue warnings based on its judgment that it was common sense that Coleman fuel should not be used in a way that would emit a stream of fuel from a tank. Id. at 1192-93.

Under Volz, Equity's continued "advertising, promoting and renting" of its apartments is not sufficient evidence to establish Equity possessed the requisite evil mind. Additionally, unlike the defendants in Volz, Equity took affirmative steps to protect its tenants upon learning of the danger mini-blinds posed to small children. Specifically, Equity implemented a Retrofit Program in 2001, issued a Form Letter to its then current tenants, and adopted procedures which require its employees to check the mini-blinds for safety concerns and requires the maintenance supervisor to personally inspect the apartments before a new tenant moves into an apartment. It is also undisputed that the blinds in Plaintiffs' apartment contained a warning label. Thus, even when the facts are viewed in the light most favorable to Plaintiffs, the Court finds that Equity's conduct is significantly less egregious than conduct the Arizona Supreme Court has found was insufficient as a matter of law to support a finding that punitive damages were appropriate.

Plaintiffs, however, cite Hooper v. Truly Nolen of America, Inc., 832 P.2d 709, 711 (Ariz. Ct. App. 1992) as illustrative of the facts necessary to justify an award of punitive damages. In Hooper, the Arizona Court of Appeals stated "the primary consideration is the reprehensibility of conduct and severity of harm" and noted "[a]ttempts at concealment, defiance of law or prior orders and failure to remedy also support a punitive award." Hooper, 832 P.2d at 711. Applying these concepts, the Court of Appeals determined punitive damages were appropriate and that the defendant's contention its management was

1  unaware its employees were improperly spraying chlordane "strains credibility" after
2  finding: 1) defendant's supervisors acknowledged that spraying chlordane (a carcinogenic
3  agent) was improper, 2) the "spraying" violated the products express label, 3) a manager
4  actually participated in at least one illegal "spraying" and 4) the "spraying" violated a
5  consent order entered against the company that the court found was certainly known to
6  management. Id.

7  Unlike the defendants in Hooper, Plaintiffs failed to produce evidence that Equity's
8  management had knowledge of, or participated in, conduct that violated warnings on the
9  mini-blinds or a consent order that required Equity to alter the blinds. Rather, it is
10 undisputed that upon learning of the dangers associated with mini-blind cords in 2001,
11 Equity voluntarily implemented a Retrofit Program in 2001, sent its then current tenants a
12 Form Letter warning them of these dangers and implemented policies that required its
13 employees to check the mini-blind cords for compliance with the Retrofit Program before
14 new tenants moved into an apartment.

15 The Court recognizes that Plaintiffs have put forth evidence that Equity failed to
16 perform a comprehensive Retrofit Program (it is undisputed that the blinds in Plaintiffs'
17 apartment did not comply with Equity's safety standards). The Court finds, however, that
18 even assuming Equity negligently missed an apartment, there is no evidence Equity knew
19 that the mini-blind cords in Plaintiffs' apartment had not been retrofitted or that Retrofit
20 Program was not adequately and completely implemented and took steps to conceal this
21 information.

22 While the Court makes no findings as to whether the Retrofit Program was successful
23 or whether Equity's inspection procedures were followed in this case, the Court finds that
24 these proactive steps, intended to minimize or eliminate the risk to its tenants, clearly
25 distinguish Equity's conduct in this case from the conduct of the defendants in Hooper.
26 Thus, even when the facts are viewed in the light most favorable to Plaintiffs, the Court
27 finds that Equity's conduct, even if assumed to be culpable, is significantly less egregious
28

1  than the conduct Plaintiffs contend is illustrative of behavior that would allow a reasonable
2  jury to impose punitive damages.
3      The Court also finds that Plaintiffs have failed to produce evidence Equity ignored
4  flaws in the Retrofit Program and/or inspection protocols or had knowledge these
5  procedures were insufficient.  Accordingly, the Court finds that even assuming that Equity's
6  failure to properly retrofit and/or inspect the mini-blind cords and properly warn Plaintiffs of
7  the dangers these cords pose to small children was negligent, no reasonable jury could find
8  these omissions are clear and convincing evidence that Equity consciously disregarded a
9  substantial risk of significant harm to Plaintiffs.

## **CONCLUSION**

12     There is no dispute that a tragedy has occurred.  This notwithstanding, the Court
13 finds that even assuming that Equity's conduct was culpable, Plaintiffs have failed to set
14 forth evidence from which a reasonable jury could find that this conduct is clear and
15 convincing evidence that Equity intended to injure Plaintiffs or consciously disregarded a
16 substantial risk of significant harm to Plaintiffs.  Thus, the Court finds that a reasonable jury
17 could not find Equity possessed the requisite evil mind by clear and convincing evidence.
18 Accordingly,

20     **IT IS HEREBY ORDERED** that Equity's Motion for Partial Summary Judgment re:
21 Punitive Damages is hereby **GRANTED**.

23     DATED this 14th day of February, 2006.

_____
Stephen M. McNamee
Chief United States District Judge