WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael C. Bauerline, et al.,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>Equity Residential Properties Management Corporation; Lotus & Windoware, Inc.; Jumbo Surplus Corporation; John and Jane Does I-X; Black and White Corporations/Partnerships I-X,<br><br>　　　　　　　Defendants. | NO. CIV-04-1904-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Pending before the Court is Defendant Lotus & Windoware, Inc.'s ("Lotus") Motion for Summary Judgment (the "Motion"). (Dkt. 91.) Plaintiffs Michael Bauerline, Shannon Bauerline, and Patricia Bauerline ("Plaintiffs") oppose the Motion. (Dkts. 99-100, 108.) For purposes of the instant Motion only, Defendant Equity Residential Properties Management Corporation ("Equity") joins in Plaintiffs' opposition. (Dkt. 112.) After considering the arguments raised by the parties, the Court issues the following ruling.

**BACKGROUND**

This case arises out of the death of Brooke Bauerline ("Brooke"), which occurred on May 15, 2003. Brooke died of strangulation when her neck was caught in a

loop formed by multiple mini-blind pull cords joined together in a single tassel. The mini-blinds were installed in an apartment complex maintained by defendant Equity. Plaintiffs allege that Lotus and Jumbo Surplus Corporation ("Jumbo") designed, manufactured, and/or distributed the mini-blinds that led to Brooke's strangulation and that Lotus and Jumbo were also engaged in recall/retrofit efforts of the mini-blinds throughout Arizona. (Dkt. 47 at 1-15.) Defendant Lotus contends it distributed the mini-blind in question without any loops in the separate pull cords and with a warning label and two warning hang tags, in compliance with industry standards. (Dkt. 91 at 2.) Lotus further contends that, after the mini-blind was distributed, someone other than Lotus altered it by removing the warning hang tags and tying the separate pull cords together, forming two dangerous loops. (Id.)

**A.     Procedural Background**

On August 10, 2004, Plaintiffs filed a complaint in Maricopa County Superior Court against Lotus and Equity. (Dkt. 1, Ex. A.) On September 13, 2004, Equity removed the action to this Court. (Dkt. 1.) On May 12, 2005, Plaintiffs filed a First Amended Complaint, adding plaintiff Patricia Bauerline, Brooke's surviving sister who witnessed the accident, and defendant Jumbo Surplus Corporation ("Jumbo"). (Dkt. 40.) On June 29, 2005, Plaintiffs filed a Second Amended Complaint (the "Complaint"). (Dkt. 47.)

The Complaint contains seven counts: (i) Count 1, Negligence against Lotus and Jumbo; (ii) Count 2, Strict Products Liability against Lotus and Jumbo; (iii) Count 3, Civil Conspiracy against Lotus and Jumbo; (iv) Count 4, Negligence against Equity; (v) Count 5, Negligent Infliction of Emotional Distress by Michael Bauerline against all defendants; (vi) Count 6, Negligent Infliction of Emotional Distress by Patricia Bauerline against all defendants; and (vii) Count 7, Claim for Punitive Damages against all defendants.

On August 25, 2005, pursuant to the parties' stipulation, the Court dismissed Count 5 of the Complaint without prejudice. (Dkt. 56.) On February 15, 2006, the Court granted Equity's motion for partial summary judgment on Claim 7. (Dkt. 80.) Lotus seeks

summary judgment on Counts 1, 2 and 3. (Dkt. 91.)

**B.     Factual Background**[1]

### The Strangulation Death of Brooke Bauerline

Beginning in September 2002, Brooke, her sister and her father, Michael Bauerline, lived in the La Mariposa apartment complex owned and operated by defendant Equity. (Dkts. 92 at ¶1; 100 at ¶1 and Ex. 5 at ¶3.)  When the Bauerlines moved into the apartment, neither the blind at issue nor any other window covering contained any warning "hang tags." (Dkt. 100, Ex. 5 at ¶6.) Before Brooke's death, Brooke's father was not aware of, and did not read, any warning on the mini-blinds in the apartment, even though the bottom rail of the blind at issue contained a warning label. (Dkts. 92 at ¶14; 100 at ¶14.)

Brooke's bed was located under a window covered by the mini-blind at issue. When she stood on the headboard of her bed, Brooke was able to reach the mini-blind pull cord. (Dkts. 92 at ¶2; 100 at ¶2.)  On May 15, 2003, at the age of 3½ years, Brooke was strangled to death when her throat was caught in one of the loops of the mini-blind pull cord. (Dkts. 92 at ¶¶3-4; 100 at ¶¶3-4.)

At the time of Brooke's death, the three pull cords of the mini-blind were joined together inside a single tassel, forming two loops. (Dkts. 92 at ¶5; 100 at ¶5.) When Brooke was found strangled to death, one of the loops was around and under her throat from ear-to-ear. (Dkts. 92 at ¶6; 100 at ¶6.)

### Distribution and Design of the Mini-Blind at Issue

The parties agree that, in 1998, Lotus distributed, but did not manufacture, the mini-blind that caused Brooke's death. (Dkts. 92 at ¶7; 100 at ¶7.) Plaintiffs contend Lotus designed the mini-blind because it dictated, among other things, the warnings that Jumbo, the manufacturer of the blinds, was supposed to affix to the product. (Dkt. 100 at ¶7 and Exs. 1 at 26-27, 128-29; Ex. 2.)  Lotus denies designing the mini-blind, but admits

---

[1] Except as otherwise stated below, the following facts are not genuinely disputed.

-3-

specifying whether warnings were to be attached to the blind and separate tassels were to be affixed to the pull cords. (Dkts. 92 at ¶7; 114 at ¶¶25-28.)

The parties dispute whether, when Lotus distributed the mini-blind in 1998, each of the three pull cords entered separate tassels such that no dangerous loops were formed by the joinder of multiple cords inside one tassel. (Dkts. 92 at ¶8; 100 at ¶8.)

When Lotus distributed the mini-blind in 1998, it contained a total of three warnings: one label adhered to the bottom rail of the mini-blind and two hanging tags attached to the pull cords. (Dkt. 92 at ¶9.)[2] The warning label on the bottom rail of the mini-blind in question read: "WARNING Young children can become entangled and strangle in cord or bead loops. Use safety devices to reduce access or eliminate loops." (Dkts. 92 at ¶11; 100 at ¶11.) After Lotus distributed the mini-blind at issue, a person or persons other than Lotus altered the mini-blind by removing the two warning hang tags attached to the pull cords of the blind. (Dkts. 92 at ¶21; 100 at ¶21.)

**Industry Standards**

On November 27, 1996, the United States Consumer Product Safety Commission (the "CPSC") approved the American National Standard for Safety of Corded Window Covering Products, ANSI/WCMA standard A100.1-1996 (the "ANSI/WCMA Standard"). The ANSI/WCMA Standard provided that the application of three separate warnings on mini-blinds and the separation of pull cords by separate tassels are two ways

---

[2] Plaintiffs do not dispute the presence of a warning label on the bottom rail of the mini-blind at the time it was distributed by Lotus. Plaintiffs do dispute the presence of two "hang tag" warnings attached to the pull cords when the mini-blind was distributed. See Dkt. 100 at ¶9. The Court finds there is no genuine issue of material fact as to whether the mini-blinds were distributed in 1998 with the hang tags warnings. Plaintiffs' evidence fails to demonstrate otherwise and does not create a genuine issue of material fact, see Dkt. 100, Ex. 3 at ¶11 (stating only it is "not clear that the [mini-blind] was sold with hang tags"); Ex. 5 at ¶6 ("At the time I moved into the apartment, neither the blind in question, nor any window covering in the apartment, contained any warning hang tags.") (emphasis added). See Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001) (self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge).

to "reduce the possibility of injury, including strangulation, to young children from the . . . cord, or any type of flexible loop device used to operate the product." (Dkts. 92 at ¶10 and Ex. J; 100 at ¶10.)  Compliance with the ANSI/WCMA Standard is the minimum acceptable industry standard. (Dkt. 100 at ¶10 and Ex. 6.)

On January 19, 2001, the CPSC recommended revisions to the ANSI/WCMA Standard. (Dkt. 92 at ¶15.) Among the CPSC's recommended revisions were that (i) cord stop devices be placed on accessible inner cords to decrease the risk of inner cord strangulation; and (ii) pull cord lengths be limited to 7.25 inches. (Dkts. 92 at ¶15; 100 at ¶15.) On August 29, 2002, the ANSI/WCMA Standard was revised to include the requirement of placing cord stop devices on accessible inner cords, but the Standard did not incorporate the CPSC's recommendation that cord lengths be limited to 7.25 inches. (Dkts. 92 at ¶16 and Ex. N; 100 at ¶16.)

**Retrofitting at La Mariposa Apartments**

In September 1994, the Window Covering Safety Council (the "WCSC") submitted a Voluntary Corrective Action Plan to the CPSC that detailed the need for a retrofit program to separate looped pull cords then commonly associated with two-cord mini-blinds. (Dkt. 80 at 3:10-14.) In September 2000, the WCSC submitted a second Action Plan to the CSPC that detailed the need for the industry to adopt product modifications to place stop devices on mini-blinds to prevent inner cords from being pulled and formed into loops. (Id. at 3:15-18.)

In 2001, defendant Equity sought to retrofit mini-blinds in the La Mariposa apartment complex to implement retrofit programs that the WCSC had submitted to the CPSC in 1994 and 2000. (Dkts. 92 at ¶17; 100 at ¶17.) The retrofit program Equity undertook involved (i) separating looped pull cords on mini-blinds by placing a separate tassel on each pull cord; and (ii) placing plastic "doughnuts" on each pull cord to prevent the centerline in the blind from being pulled out. (Dkts. 92 at ¶¶18-19; 100 at ¶¶18-19.)

The parties agree that Equity attempted to retrofit the mini-blind that killed Brooke by installing "plastic doughnuts" on each of the three pull cords. (Dkts. 92 at ¶20; 100 at ¶20.) However, the parties disagree whether Equity separated and put clear tassels on each of the three pull cords. Lotus contends Equity altered the mini-blind at issue by removing the color-matched tassels on the blinds distributed by Lotus and placing a clear tassel on each of the three separate pull cords. (Dkt. 92 at ¶20.) Lotus further contends that a person other than Lotus altered the mini-blind at issue by passing the three separate pull cords through a single clear tassel, forming two dangerous loops. (Id., at ¶¶21-22.) Plaintiffs further contend the blind at issue was distributed and sold by Lotus with three pull cords going into a single clear tassel. (Dkt. 100 at ¶20.) As a result, Plaintiffs contend there is a genuine dispute of fact as to whether any alteration took place and, if so, whether such alteration was foreseeable. (Dkt. 99 at 10.)

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, mere allegations of a factual dispute between the parties will not defeat an otherwise proper motion for summary judgment. Rather, Rule 56 requires that there be a genuine issue of material fact, which is a dispute capable of affecting the outcome of the case. Id. Accordingly, summary judgment is proper if, under governing laws, there is only one reasonable conclusion as to the verdict; if reasonable finders of fact could resolve a factual issue in favor of either party, summary judgment should not be granted. Id.

The movant on a summary judgment motion bears the initial burden of

-6-

providing a legal basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party satisfies this burden, the opposing party must produce specific evidence, through affidavits or admissible discovery material, to show that a genuine issue for trial exists. See Fed.R.Civ.P. 56(e). All inferences drawn from the evidence must be viewed in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Tech'l Servs., Inc., 504 U.S. 451, 456 (1992). However, inferences must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party. Celotex, 477 U.S. at 322. Inferences cannot be created by pointing to "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Deference to the nonmoving party has limits: (i) a plaintiff cannot rest on the allegations in her pleadings to overcome a motion for summary judgment (Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995)); and (ii) self-serving affidavits will not establish a genuine issue of material fact if they fail to state facts based on personal knowledge or are too conclusory (Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001)).

**DISCUSSION**

**A.         Count 1: Liability for Negligence**

Lotus contends it is entitled to summary judgment on Plaintiffs' negligence claim because a reasonable trier of fact could only conclude that Lotus (i) used reasonable care under the circumstances or (ii) the negligence alleged against it was not the proximate cause of Brooke's death.[3] (Dkt. 91 at 9.) The Court finds that summary judgment may not

---

[3] When Lotus filed the instant Motion for Summary Judgment, Jumbo had not yet appeared in the action. See Dkts. 91, 160. Thus, the Court finds that Lotus' reference to Jumbo is an attempt to avoid Plaintiffs' argument that Lotus designed the mini-blind at issue. Thus, the Court will strike all of Lotus' references to Jumbo. See Dkt. 91 at 9:1-6, 8, 11, 13, 15, 19; 10:3-4, 6, 8, 11-13, 15, 21; 11:1-2, 5, 7-8, 10, 13, 17; 13:1, 3, 6-7.

be granted on Plaintiffs' negligence claim because there is a genuine issue of material fact as to whether Lotus distributed the mini-blind at issue with the separate pull cords tied together in a single tassel, creating two dangerous loops, one of which strangled Brooke.

Lotus contends it was not "'negligent in allowing the [mini-blinds at issue here] to be sold without a mechanism to prevent the possibility of strangulation,'" because "the only 'mechanism' needed to prevent Brooke's strangulation was the separate, unlooped pull cords . . . [it] provided." (Dkt. 91 at 9.) In defending against Equity's motion for partial summary judgment, Plaintiffs argued that "[t]he blind in question was manufactured in 1998 . . . with a separate plastic tassel at the end of each draw cord string." (Dkt. 68 at 18, ¶54; see also dkt. 67 at 6:10-12; at 6:20-23.) Plaintiffs now dispute "whether there was a separate tassel at the end of each pull cord as [Lotus] contends." (Dkt. 100 at ¶8; Ex. 3.) For three reasons, the Court rejects Lotus's argument that there is no genuine issue of material fact as to whether Lotus distributed the mini-blind that strangled Brooke with separate, unlooped pull cords.

First, the Court exercises its discretion and refuses to treat Plaintiffs' earlier contention that the blind was manufactured with separate tassels at the end of each pull cord, as a binding judicial admission at this stage of the proceedings because this statement was not determined to be "undisputed" in granting Equity's motion for partial summary judgment (dkt. 80 at 3-4). See American Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226-27 (9th Cir. 1988) (district court has discretion to determine whether statements of fact in briefs may be considered judicial admissions of party). Second, even assuming such statement is a judicial admission, the Court finds that Plaintiffs have sufficiently retracted their judicial admission that the blind in question was manufactured and distributed with a separate plastic tassel at the end of each draw cord string (see dkt. 100 at ¶22). See Sicor Ltd. v. Cetus Corp., 51 F.3d 848, 859-60 (9th Cir. 1995) ("Where, however, the party making an ostensible judicial admission explains the error in a subsequent pleading or by

amendment, the trial court must accord the explanation due weight."). Third, the Court rejects Lotus' contention that insufficient evidence supports the bases of Plaintiffs' supplemental expert report, issued by Shelly Deppa (dkt. 113 at 2-5). The Court finds that Ms. Deppa's report cites specific probative evidence in support of her opinion that there is "not sufficient evidence to determine that the subject blinds were originally sold with 3 separate tassels, and in fact, there is just as much evidence to the contrary," such that a reasonable jury could resolve this factual issue in favor of either Plaintiffs or Lotus (see dkt. 100, Ex. 3 at 5/18/06 rept p.5). See Anderson, 477 U.S. at 248.

Similarly, given that there is a material factual dispute as to whether Lotus distributed the mini-blind that killed Brooke with separate, unlooped pull cords, Lotus' argument that it was not "negligent with respect to the proximate cause of Brooke's death," because they did not distribute the mini-blind with the loop that caused her death, is also rejected. (Dkt. 91 at 9.). See Kavanaugh v. Kavanaugh, 641 P.2d 258, 266 (Ariz. Ct. App. 1982) ("What constitutes the proximate cause of an injury in a particular case is a question of fact to be determined from all the surrounding circumstances, and can only be a question of law when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from them.").

Even assuming, *arguendo*, there is no material factual dispute as to whether Lotus distributed the mini-blind that killed Brooke with separate, unlooped pull cords, the Court finds there is a material factual dispute as to whether altering the pull cords by tying them together in a single tassel was reasonably foreseeable, such that the alteration constituted an intervening, though not superseding, cause. See Barrett v. Harris, 86 P.3d 954, 958 (Ariz. Ct. App. 2004) ("an intervening cause becomes a superseding cause, thereby relieving the defendant of liability for the original negligent conduct, 'when [the] intervening force was unforeseeable and may be described, with the benefit of hindsight, as extraordinary'") (citation omitted). There is no genuine dispute of fact that Lotus distributed

the mini-blinds with three warnings: one permanent label and two paper hang tags. See supra at 4 & n.2. Similarly, it is not disputed that, when the Bauerlines moved into the apartment, neither the blind at issue nor any other window covering contained any warning "hang tags." (Dkt. 100, Ex. 5 at ¶6.) Although the blind at issue warned that "[y]oung children can become entangled and strangle in cord or bead loops. Use safety devices to reduce access or eliminate loops," one of the missing hang tags specifically warned users not to "tie cords together." (Dkts. 92 at ¶¶11, 13; 100 at ¶11.) Because there is a material factual dispute as to whether the alteration was foreseeable in view of the missing hang tags and remaining warning, the Court will not grant summary judgment on Plaintiffs' claim that Lotus negligently failed to (i) distribute the mini-blind at issue with adequate warnings not to tie pull cords together; and (ii) provide landlord customers replacement hang tags warning people not to tie pull cords together. See Piper v. Bear Medical Systems, Inc., 883 P.2d 407, 413 (Ariz. Ct. App. 1994) (whether alteration is reasonably foreseeable is a question of fact for jury unless reasonable minds could not differ).

Lotus has not satisfied its burden of showing there is no genuine issue of material fact that it used reasonable care under the circumstances or that the negligence alleged against it was not the proximate cause of Brooke's death. Thus, summary judgment on Plaintiffs' negligence claim will be denied.

**B.        Claim 2:  Products Liability**

Rather than dispute that Plaintiffs can establish a prima facie case of products liability, Lotus relies on two affirmative defenses to such claims.

**1.        Alteration Not Reasonably Foreseeable**

In a products liability case in Arizona, a defendant is not liable if it proves:

> [t]he proximate cause of the incident giving rise to the action was an alteration or modification of the product that was not reasonably foreseeable, made by a person other than the

defendant and subsequent to the time the product was first sold by the defendant.

A.R.S. § 12-683(2). Relying on this affirmative defense, Lotus argues that summary judgment should be granted on Plaintiffs' products liability claim because (i) the proximate cause of Brooke's death was an alteration of the mini-blind caused by someone other than Lotus and (ii) the alteration that occurred after Lotus distributed the mini-blind was not reasonably foreseeable. (Dkt. 91 at 6-7.) The Court disagrees.

As previously stated, there is a material factual dispute as to whether Lotus distributed the mini-blind that killed Brooke with separate, unlooped pull cords. Supra at 4, 8-9. Because a jury must resolve this factual dispute, the Court rejects Lotus's argument that the proximate cause of Brooke's death was an alteration of the mini-blind caused by someone other than Lotus. See A.R.S. § 12-683(2).

Even assuming, *arguendo*, Lotus distributed the mini-blind that killed Brooke with separate, unlooped pull cords, summary judgment on Plaintiffs' products liability claim must be denied because whether an alteration is reasonably foreseeable is a question of fact for the jury unless reasonable minds could not differ. See Piper, 883 P.2d at 413.

Lotus argues that, in light of the permanent warning attached to the bottom mini-blind rail and the two hang tag warnings attached to the mini-blind pull cords, "no rational trier of fact could find it reasonably foreseeable that someone would ignore the warnings and alter the mini-blind by tying the separate pull cords together to form a loop." (Dkt. 91 at 7.) Although Arizona law precludes a products liability claim against a defendant due to unforeseeable modifications, the Court disagrees with Lotus that the alteration at issue here – tying the pull cords together – is unforeseeable as a matter of law.

It is not genuinely disputed that, when Lotus distributed the mini-blind in 1998, it contained a total of three warnings: one label adhered to the bottom rail of the mini-blind and two hanging tags attached to the pull cords. See supra at 4 & n.2. However, it is

also not disputed that, when the Bauerlines moved into the apartment, neither the blind at issue nor any other window covering contained any warning "hang tags." (Dkt. 100, Ex. 5 at ¶6.)  Although the label on the bottom rail of the mini-blind in question warned, "[y]oung children can become entangled and strangle in cord or bead loops.  Use safety devices to reduce access or eliminate loops," one of the missing hang tags specifically advised users not to "tie the cords together."  (Dkts. 92 at ¶¶11, 13; 100 at ¶11.)   Given Lotus's specific warning that users should not tie the cords together, a reasonable jury could find that Lotus anticipated such an alteration.  See A.R.S. § 12-681(8) ("'Reasonably foreseeable alteration' . . . means an alteration . . . of the product that would be expected of an ordinary and prudent purchaser, user or consumer and that an ordinary and prudent manufacturer should have anticipated").  Viewing the evidence in the light most favorable to Plaintiffs, a jury could reasonably conclude that altering the mini-blind at issue by tying the pull cords together was foreseeable, given that the only specific warning not to tie the cords together was attached to a paper hang tag not attached to the blinds when the Bauerlines moved into the apartment.  Thus, there is a genuine issue of material fact as to whether alteration of the blind cords by tying them together was reasonably foreseeable.  See Piper, 883 P.2d at 413.

### 2. **Product Conformed with State of the Art**

Under A.R.S. § 12-683, a defendant is not liable for products liability if

> [t]he defect in the product is alleged to result from inadequate design or fabrication, and if the plans or designs for the product or methods and techniques of manufacturing, inspecting, testing and labeling the product conformed with the state of the art at the time the product was first sold by defendant.

A.R.S. § 12-683(1). Lotus contends it has proven the "state of the art" defense as a matter of law because it distributed the mini-blind in 1998 "with three warnings about the danger

of strangulation, three separate pull cords, and no loops in the pull cords," which conformed to the voluntary ANSI/WCMA Standard. (Dkt. 91 at 8.) Because the mini-blind conformed to the ANSI/WCMA Standard when it was distributed, Lotus posits, "a rational trier of fact would be compelled to find the mini-blind in question conformed with the state of the art in all aspects relevant to this case." (Id.)  For two reasons, the Court is not persuaded.

First, there is a material factual dispute as to whether Lotus distributed the mini-blind at issue with separate, unlooped pull cords. Supra at 4, 8-9.  As a result, there is also a material factual dispute as to whether Lotus distributed the mini-blind in conformity with the ANSI/WCMA Standard. See Dkt. 91 at 8 (conformance with ANSI/WCMA Standard requires, *inter alia*, "three individual tassel pull cords without loops").

Second, even assuming, *arguendo*, Lotus distributed the mini-blind in conformity with the ANSI/WCMA Standard, the Court finds that compliance with such Standard did not render the mini-blinds at issue "state of the art" as a matter of law. Rather, the Arizona statute providing for this defense defines state of the art as "the technical, mechanical and scientific knowledge of manufacturing, designing, testing or labeling the same or similar products that was in existence and reasonably feasible for use at the time of manufacturing." A.R.S. § 12-681(10).  Moreover, unless reasonable minds could not differ, the determination of whether a product is state of the art is a question of fact for the jury. See Anderson v. Nissei Asb Mach. Co., Ltd., 3 P.3d 1088, 1097 (Ariz. Ct. App. 1999).

In the present case, even assuming, *arguendo*, Lotus distributed the mini-blind at issue in conformity with the ANSI/WCMA Standard, reasonable minds could differ with respect to the determination of whether compliance with the ANSI/WCMA Standard is "state of the art." As Plaintiffs note, Lotus has presented no evidence that the ANSI/WCMA Standard provided the best and most feasible design for mini-blinds in 1998, nor has Lotus shown that paper hang tag warnings, rather than permanent, on-product warnings, were "state of the art," especially given the foreseeability of paper warnings being removed or

deteriorating. See Golonka v. General Motors Corp., 65 P.3d 956, 974-75 (Ariz. Ct. App. 2003) (a product or warning is only state of the art if nothing better "is in existence and reasonably feasible for use at the time of manufacturing"). Moreover, no Arizona court has recognized that compliance with an ANSI Standard constitutes "state of the art," and at least one federal court has reached the opposite conclusion. See Meisner v. The Patton Electric Co., Inc., 781 F.Supp. 1432, 1443 (D. Neb. 1990) (rejecting "state of the art" defense with respect to a space heater because "ANSI Standards are voluntary standards, and more importantly, *minimum* standards.") (emphasis in original). Here, as in Meisner, Lotus has expressly conceded that the ANSI/WCMA Standard is voluntary (dkt. 91 at 8) and Plaintiffs have demonstrated that compliance with the ANSI/WCMA Standard is the minimum acceptable industry standard. (Dkt. 100 at ¶10 and Ex. 6.) Finally, Arizona law recognizes that, "[a]lthough the customs of an industry may be relevant, because those customs may lag behind technological development, they are not identical with state of the art." Gosewisch v. American Honda Motor Co., Inc., 737 P.2d 365, 394 (Ariz. Ct. App. 1995), vacated in part by, 737 P.2d 376 (Ariz. 1987), superceded by statute on other grounds. Rather, "[c]ustom refers to what was being done in the industry; state of the art refers to what feasibly could have been done." Id. Given that Lotus has failed to present any feasibility evidence regarding the provision of cord cleats, shorter cords, or permanent warnings, there is a material factual dispute whether the mini-blinds distributed by Lotus in 1998 were "state of the art." Thus, summary judgment on Plaintiffs' products liability claim will be denied.

**C.        Claim 3: Agency/Civil Conspiracy**

In Arizona, there is no civil action for conspiracy. However, there is an action for damages caused by acts committed pursuant to a conspiracy. Estate of Hernandez v. Flavio, 930 P.2d 1309, 1313 (Ariz. 1997). To be found liable for damages caused by acts committed pursuant to a conspiracy, "one must have committed some tortious act" that

1 caused injuries or damages. Id. at 1314.

2 Lotus contends they are entitled to summary judgment on Plaintiffs'
3 conspiracy claim because there is no evidence Lotus may be held "strictly liable for the
4 mini-blind," "[n]or is there any evidence that [Lotus] was negligent in any way that caused
5 Brooke's death." (Dkt. 91 at 13.) Because the Court has determined that summary
6 judgment will not be granted in Lotus' favor on Plaintiffs' negligence and strict liability
7 claims, there is a material factual dispute as to whether Lotus committed a tortious act.
8 Thus, summary judgment will not be granted on Plaintiffs' conspiracy claim. See Estate of
9 Hernandez, 930 P.2d at 1314 (to be found liable for damages caused by acts committed
10 pursuant to a conspiracy, "one must have committed some tortious act).

11 For all of the reasons stated above,

12 **IT IS HEREBY ORDERED DENYING** Defendant Lotus & Windoware,
13 Inc.'s Motion for Summary Judgment. (Dkt. 91.)

14 **IT IS FURTHER ORDERED** that, at the request of Jumbo Surplus
15 Corporation (dkt. 163), the Court Deputy shall schedule and issue a Preliminary Pretrial
16 Conference pursuant to Rule 16(b) of the Federal Rules of Civil Procedure.

17 DATED this 29th day of December, 2006.

Stephen M. McNamee
United States District Judge