**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL C. BAUERLEIN, et al., | No. CIV 04-1904-PHX-SMM |
| Plaintiffs, | **MEMORANDUM OF DECISION AND ORDER** |
| vs. | |
| EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORP.; et al., | |
| Defendants, | |

Pending before the Court is the Motion for Summary Judgment (Doc. No. 144) filed by Defendant Lotus and Windoware (L&W). L&W seek summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Rule 56.1 of the Rules of Practice of this Court on Count VII of Plaintiffs' Second Amended Complaint seeking punitive damages against L&W. After careful consideration, the Court issues the following ruling.

## BACKGROUND

This case arises out of the accidental strangulation death of Plaintiffs' minor daughter, which resulted from her neck getting caught in the cords of a mini-blind distributed by L&W. L&W contends that it distributed the blinds in question with separate tassels on each cord and three separate warnings-warning against the danger posed by creating a loop in the pull cords, a warning advising parents to keep cribs and furniture away from blinds, and a warning advising parents to use safety devices to keep cords away from children.

On August 10, 2004, Plaintiffs filed the original Complaint in Maricopa County Superior Court. On September 13, 2004, this case was removed from State court under 28 U.S.C. § 1332(a) (Doc. No. 1). On June 29, 2005, Plaintiffs filed a Second Amended Complaint (Doc. No. 47). On October 12, 2006, L&W filed the pending Motion for Summary Judgment (Doc. 144) and on November 13, 2006, Plaintiffs filed their Response to the motion, which was then followed by a Reply filed by Defendant shortly thereafter on December 7, 2006.

## **STANDARD OF REVIEW**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Federal Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Jesinger*, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Jesinger*, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322; *see also Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *See Celotex*, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's]

1  pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial."
2  FED. R. CIV. P. 56(e); *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574,
3  585-88 (1986); *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir. 1995).

## **UNDISPUTED FACTS**[1]

On May 15, 2003, Plaintiffs' daughter was strangled to death when she caught her neck in a loop in the blind cords that was created by multiple blind draw cords entering a single tassel. (Court's Order dated February 14, 2006, page 4, lines 17-19; Plaintiff's Second Amended Complaint, ¶¶ 10, 13, 14 and 16; Plaintiff's Statement of Facts in Opposition to Defendant Equity's Motion for Partial Summary Judgment Regarding Punitive Damages, ¶ 1, page 8, line 27 through page 9, line 1.)

In 1998, Defendant L&W distributed, but did not manufacture or design the mini-blind that caused Plaintiffs' minor daughter's death. That mini-blind was designed and manufactured by Defendant Jumbo Surplus Corporation ("Jumbo"). (Plaintiffs' Second Amended Complaint, ¶ 19; Deposition of Michael Liu, president of L&W, page 7, lines 19-23;)

According to the sworn testimony of Michael Liu, L&W CEO, when L&W distributed the mini-blind in question in 1998, each of the three pull cords on the mini-blind had a separate tassel on it so that loops were not formed by joining the cords in one tassel or otherwise. (Deposition of Michael Liu, page 61, lines 11 through page 62, line 10; page 63, lines 1-5 and 19-23; page 71, lines 1-9; page 98, line 5 through page 99, line 6, attached hereto as Exhibit B; Plaintiff's Statement of Facts in Opposition to Defendant Equity's Motion for Partial Summary Judgment Regarding Punitive Damages, ¶ 51, page 16, lines 12-21; ¶ 54, page 17, lines 7-11.) Furthermore, the design of the mini-blind in question conformed to the Council's 1994 retrofit program to "separate the cords of [the] blind, and place a separate plastic tassel at the end of

---

[1] The following facts are undisputed unless otherwise noted.

- 3 -

1 each cord." (Plaintiff's Statement of Facts in Opposition to Defendant Equity's Motion for
2 Partial Summary Judgment Regarding Punitive Damages, ¶ 51, page 16, lines 12-21.)[2]

3 **The Warnings**[3]

4     Defendant contends that when L&W distributed the mini-blind in question in 1998, the
5 mini-blind had a total of three warnings: one label on the bottom rail of the mini-blind, and two
6 hanging tags attached to the pull cords. (Deposition of Michael Liu, page 28, lines 1-20; page
7 46, line 24 through page 47, line 21; page 48, line 18 through page 49, line 16; page 121, line
8 1 through page 122, line 1; page 123, lines 3-22; page 132, lines 12-17; page 134, lines 12-17;
9 page 135, lines 1-24; page 139, lines 3-13; and Exhibits 15 and 16 thereto, attached hereto as
10 Exhibit C; Affidavit of Michael Liu, attached hereto as Exhibit D, ¶ 3.)

11     Plaintiff contends that there was only one warning on the mini-blinds at the time they
12 moved into the apartment.  Plaintiff further contends that either the mini-blind in question was
13 distributed without the two hang tag warnings or, in the alternative, that the hang tag warnings
14 were removed by personnel of Co-Defendant Equity. (PSOF).  Defendant avers that after L&W
15 distributed the mini-blind in question and before Brooke's death, a person or persons other than
16 L&W altered the mini-blind in question by removing the following two warning hanging tags
17 attached to the pull cords of the mini-blind. (Deposition of Michael Liu, page 58, line 24
18 through page 59, line 4, and Exhibit 4 thereto, attached hereto as Exhibit F.)

19     (1) "WARNING Young children can strangle in the loop of pull cords, chain and
bead cords, and cords that run through window coverings. They can also wrap
20 cords around their necks. To avoid strangulation and entanglement, keep cords out
of the reach of young children. Also, 1. Install safety devices that remove the cord
21 loop or reduce access to cords, and 2. Move cribs and furniture away from
window covering cords."

---

[2]Plaintiffs argue that because L&W had no procedure in place to open the boxes and
check the products L&W was to distribute, there is no way to confirm that there were three pull
cords on the mini-blind and a separate tassel or to ensure that they conformed to the Council's
1994 retrofit program.

[3]Whether the two warnings on the hanging tags were present on the blinds at the time the
blinds were distributed is in dispute.

- 4 -

1  (Deposition of Michael Liu, page 135, lines 1-24; page 139, lines 3-13; and Exhibit 15 thereto,

2  attached hereto as Exhibit C; Affidavit of Michael Liu, attached hereto as Exhibit D, ¶ 5.)

> (2) "WARNING These individual tassel cords reduce the strangulation hazard in the pull cord by removing the loop. Do not tie the cords together. Check cords periodically to make sure the cords have not twisted into a loop. This device will not prevent strangulation hazard if young children wrap pull cords around their necks. Always keep cords out of the reach of young children."

(Deposition of Michael Liu, page 135, lines 1-24; page 139, lines 3-13, and Exhibit 16 thereto, attached hereto as Exhibit C; Affidavit of Michael Liu, attached hereto as Exhibit D, ¶ 6.)

It is undisputed that the warning label remaining on the bottom rail of the mini-blind in question read:

> "WARNING Young children can become entangled and strangle in cord or bead loops. Use safety devices to reduce access or eliminate loops."

(Deposition of Michael Liu, page 28, lines 1-20; page 46, line 24 through page 47, line 11; page 122, lines 2-16; and Exhibit 2 thereto, attached hereto as Exhibit E; Defendant Equity's Statement of Facts in Support of Motion for Partial Summary Judgment Re: Punitive Damages, ¶¶ 34-35, page 6, lines 11-17; Plaintiff's Statement of Facts in Opposition to Defendant Equity's Motion for Partial Summary Judgment Regarding Punitive Damages, ¶¶ 34-35, page 6, lines 27- 28; Court's Order dated February 14, 2006, page 4, lines 14-16.)

## **DISCUSSION**

A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Wickahoney v. Sewell*, 273 F.2d 767, 768 (9th Cir. 1959). Under Arizona law, in order to obtain punitive damages, "a plaintiff must prove that 'defendant's evil hand was guided by an evil mind.'" *Volz v. Coleman Co.*, 748 P.2d 1191, 1194 (Ariz. 1987) (citing *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986)). A plaintiff can establish the requisite evil mind by showing either that "defendant intended to injure the plaintiff" or that "defendant consciously pursued a course of conduct knowing that it created a substantial risk of harm to others." *Id.*; *see also Ranburger v. S. Pac. Transp. Co.*, 760 P.2d 551, 553 (Ariz. 1988) (stating

that an evil mind "may also be inferred when a [d]efendant acts to serve his own interests, consciously disregarding a substantial risk of significant harm to others"). Plaintiffs do not contend that L&W intended to cause the death of their daughter, instead, they contend that the evidence clearly establishes that L&W consciously pursued a course of conduct knowing that it created a substantial risk of harm to others.

To overcome summary judgment, Plaintiffs must establish by clear and convincing evidence that L&W possessed the requisite evil mind. *Thompson v. Better-Bilt Aluminum Prods., Co.*, 832 P.2d 203, 209 (Ariz. 1992). The Supreme Court of Arizona has recognized that motions for summary judgment regarding claims for punitive damages are more complicated given plaintiffs' more onerous burden of proof. The Court explained that "a motion...for summary judgment must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence. Conversely, the motion should be granted if no reasonable jury could find the requisite evil mind by clear and convincing evidence." *Id.* at 210-11.

In the present case, Plaintiffs contend that they possess clear and convincing evidence from which a jury could find that L&W acted with an evil mind by virtue of consciously pursuing a course of conduct knowing that it created a substantial risk of harm to children. More specifically, Plaintiffs contend that L&W distributed mini-blinds with long cords knowing of the danger they posed, failed to adequately warn parents on the need to shorten the cords, and failed to adequately warn parents of the type of safety devices available for the blinds, thereby creating a substantial risk of harm for the end users of its products. Plaintiffs aver that their daughter lost her life as a direct result of L&W's conscious decisions.

Prior to the death of Plaintiffs' daughter, L&W was made aware that a number deaths had resulted from cord-related window covering accidents. Specifically, in 2002, L&W was notified by the Window Covering Safety Council (WCSC) that approximately 303 corded window

covering related deaths had occurred between 1973 and 2002.[4] The Court finds that the mere fact that L&W was notified by WCSC of such deaths, although possibly relevant, is not evidence that L&W consciously disregarded a substantial risk posed (to children) by the product that it distributed to its end users.[5] Furthermore, the fact that L&W continued to distribute the blinds is not evidence supporting a claim for punitive damages because, in Arizona, "[t]he fact that a manufacturer continues to market a product is not in itself enough to show the evil mind necessary for punitive damages." *See Volz*, 748 P.2d at 1194 *(quoting Bhagvandoss v. Beiersdorf,* 723 S.W.2d 392, 398 (Mo.1987)).[6]

Plaintiffs aver that L&W "never bothered to learn why the WCSC and the CPSC had concern over mini blind designs, such as designs that allowed for loop pull cords," and in support, offered deposition testimony of L&W President Michael Liu who Plaintiffs claim had no concern about how or why children were dying. In reviewing Mr. Liu's deposition, the Court found that contrary to Plaitniffs' assertion, Mr. Liu in fact answered that he *did* have concern as to why children were dying. (Liu Depo., p. 84, line 21).

On June 30, 1994, Ira Marcus, legal counsel for WCSC met with potential members of WCSC and warned of the possibility of exposure to punitive damages in the event that the hazards associated with the blinds were not addressed. (PSOF ¶ 5). Thereafter, L&W joined WCSC and created a recall/retrofit program. Plaintiffs allege that joining WCSC was simply a smokescreen to make it appear as though L&W was doing something to remedy the situation and prevent exposure to punitive damages. Other than their opinion on Defendant's motive,

---

[4] According to the Journal of the American Medical Association actual number of deaths caused by corded window covering products from 1973 to 2002 the number could be as high as 606 because allegedly half of all injuries and deaths go unreported.

[5] The matter is arguably relevant, however, the issue in front of the Court concerns children and the hazards that mini-blinds pose to children. Here, Plaintiffs have made no showing that the number of deaths referenced was that of children specifically.

[6] The Court recognizes that L&W is a distributor, not a manufacturer as was the defendant in *Voss*, however, the findings of the Supreme Court of Arizona apply equally to distributors as they do to manufacturers.

- 7 -

however, Plaintiffs failed to provide evidence to support the assertion that L&W's association with WCSC was anything other than a valid business association.

In an internal memo drafted by Charles Hartness, L&W Manager of Sales and Marketing, to Michael Liu, L&W President, Mr. Hartness wrote, "[I] don't think that the CPSC or WCSC are doing everything the can to protect children." (PSOF ¶ 8).[7] According to Plaintiffs, Hartness's apprehension is evidence of L&W's conscious pursuit of a course of action which disregarded a substantial risk of significant harm. Further, despite his apprehension, they argue that L&W nonetheless chose to rely on WCSC to address blind safety issues on its behalf. (PSOF ¶ 2,4). The Court finds that at most, this is evidence of negligence on the part of L&W. The Supreme Court of Arizona has expressly rejected awarding punitive damages based on gross negligence or mere reckless disregard of the circumstances. *Linthicum v. Nationwide Life Ins. Co.,* 723 P.2d 675, 680 (Ariz. 1986); *Gurule v. Illinois Mut. Life and Casualty Co.,* 734 P.2d 85, 88 (Ariz. 1987). Furthermore, "gross negligence or mere reckless disregard of the circumstances"  would not be sufficient to show the "intent to injure" or "conscious and deliberate disregard of the interest and rights of others" necessary for a finding of "evil mind". *Volz*, 748 P.2d at 1194.

L&W contends that the miniblind in question was manufactured in 1998 with a separate plastic tassel at the end of each draw cord string.[8] L&W avers that it then distributed the mini-blinds in 1998 with each of the three pull cords on the mini-blinds having a separate tassel on it in order to avoid the formation of loops by the joining of the cords in one tassel. While the "separate tassel solution" was designed to eliminate loops created by multiple tassels entering a single pull cord, Plaintiffs contend that members of WCSC, including L&W, knew that the

---

[7]"Doing all they can" is not a cognizable legal standard and is not the standard of liability in this case. *Linthicum v. Nationwide Life Ins. Co.,* 723 P.2d 675, 680 (Ariz. 1986); *Gurule v. Illinois Mut. Life and Casualty Co.,* 734 P.2d 85, 88 (Ariz. 1987); *Volz*, 748 P.2d at 1194.

[8]This was supported by the deposition testimony of Michael Liu, President of L&W. It was also supported by Plaintiffs' statement of facts in Opposition to Defendant Equity's Motion for Partial Summary Judgment Regarding Punitive Damages, (Doc. 68, ¶54).

solution had "fatal flaws". (PSOF ¶ 6). Plaintiffs aver that L&W knew that "voluminous industry studies" indicated a foreseeability that consumers might tie, knot, or recreate the loop in any number of fashions. (PSOF ¶ 6). Plaintiffs contend that L&W knew that the *only* ways to effectively alleviate the substantial risk of harm that mini blinds posed to children were too have shorter pull cords that children could not reach, to utilize safety devices so that pull cords could be kept out of reach of children, or to sell cordless blinds. (PSOF ¶ 9, 18, 20). Plaintiffs also provided a report drafted by Certified Human Factors Professional Shelly Deppa, in which Deppa opined that the cords in question were excessively long and that whether or not the blinds in question were distributed with each of the three pull cords having a separate tassel is not clear. (Doc. 100, Ex. 5). However, Plaintiff's evidence does not provide the Court with clear and convincing evidence as required by Arizona law. Furthermore, Plaintiffs' analysis avoids considering the fact that L&W took affirmative steps to protect its end users upon learning of the danger mini-blinds posed to small children. Specifically, L&W created and implemented the recall/retrofit program in an attempt to reduce the risk of danger to children. Furthermore it is undisputed that L&W provided its users with warnings, including Plaintiffs, including the warning found on the blind in question, which specifically warned "[y]oung children can become entangled and strangle in cord or bead loops. Use safety devices to reduce access or eliminate loops" (i.e. a warning to prevent the exact tragedy such as the one involved in the matter at hand)(PSOF ¶¶ 6-7). Another warning , which was found on the bottom rail of the blind in question warned parents to "use safety devices." *Id.* The Court finds that Plaintiffs have failed to establish by clear and convincing evidence that L&W consciously pursued a course of conduct which disregard a substantial risk of harm to children.

It is well established that conduct giving rise to punitive damages must be a proximate cause of the harm inflicted. *Saucedo v. Salvation Army*, 24 P.3d 1274, 1279 (Ariz. App. 2001). Under Arizona law, the proximate cause of an injury is defined as "that which, in a natural and continuous sequence, **unbroken by any efficient intervening cause**, produces an injury, and without which the injury would not have occurred." *Id.* at 1278 (quoting *Robertson v. Sixpence Inns of Am., Inc.,* 789 P.2d 1040, 1047 (Ariz. 1990)(emphasis added). L&W contends that the

1  presence of long cords, the absence of safety devices included with the blinds, and the absence
2  of additional warnings would not have caused the death of Plaintiffs' daughter without the
3  intervening creation of the loop in the cords. In other words, L&W argues unequivocally that
4  the existence of the loop is what caused her death "in a natural and continuous sequence,
5  unbroken by any efficient intervening cause, and without which the injury [death] would not
6  have occurred."  Defendant's argument is well taken.

7  Moreover, Plaintiffs essentially contend that "apartment dwellers" have limited capacity
8  as compared to non-apartment dwellers with regard to understanding warning labels and the
9  implications therein. However, despite Plaintiffs' contention, without any quantitative evidence
10  supporting such an assertion, this is a mere supposition, insufficient to support a recovery of
11  punitive damages.  In support of their argument, Plaintiffs provided the Court with the opinion
12  of  Mr. Hartness.  It is undisputed that Mr. Hartness's position is that of L&W Manager of Sales
13  and Marketing.  However, it has not been established that Mr. Hartness is qualified to opine as
14  to whether apartment dwellers' cognitive capacity is equivalent to that of non-apartment
15  dwellers, or whether there is an increased duty owed to apartment dwellers due to a decreased
16  capacity to comprehend warning labels. The Court finds that Plaintiffs have failed to provide
17  the Court with clear and convincing  evidence necessary to support the finding that distributors
18  and manufacturers owe a higher duty to warn apartment dwellers than they do to non-apartment
19  dwellers of the risks involved with mini-blind cords.

20  Plaintiffs have made numerous assertions regarding the safety of the mini-blinds,
21  however, Plaintiff has failed to provide the Court with the evidence necessary to support such
22  assertions under *Celotex*. Thus, Plaintiffs have failed to demonstrate that they are entitled to
23  recover punitive damages from L&W for distributing the mini-blind in question.

## **CONCLUSION**

25  As articulated by this Court on previous occasions, there is no dispute that a horrible
26  tragedy has occurred.  This notwithstanding, Plaintiffs have failed to produce clear and
27  convincing evidence from which a reasonable jury could find that L&W *consciously*
28

1  *disregarded a substantial risk of significant harm*[9] to Plaintiffs.  Thus, under Arizona law, a
2  reasonable jury could not find L&W possessed the requisite evil mind by clear and convincing
3  evidence to justify awarding punitive damages to Plaintiffs.
4      Accordingly,
5      **IT IS HEREBY ORDERED GRANTING** Defendant L&W's Motion for Summary
6  Judgment on the issue of punitive damages (Doc. 155).
7      DATED this 19th day of June, 2007.

_____
Stephen M. McNamee
United States District Judge

---

[9]Furthermore, Plaintiff has failed to establish that L&W's conduct was the proximate cause of Plaintiffs' daughter's death as required under Arizona law.  Therefore, Defendant is entitled to summary judgment as to punitive damages as a matter of law. *Saucedo v. Salvation Army*, 24 P.3d 1274, 1279 (Ariz. App. 2001).

- 11 -