**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MICHAEL C. BAUERLEIN, surviving natural father of BROOKE LYNNE BAUERLEIN, deceased minor, individually and on behalf of all wrongful death beneficiaries, including SHANNON BAUERLEIN, surviving mother of BROOKE LYNNE BAUERLEIN, deceased minor; and PATRICIA JOELEE BAUERLEIN, through MICHAEL C. BAUERLEIN, her natural parent and next friend, <br><br> Plaintiff, <br><br> v. <br><br> EQUITY RESIDENTIAL PROPERTIES MANAGEMENT CORPORATION, an Illinois Corporation d/b/a LA MARIPOSA; LOTUS & WINDOWARE, INC., a California Corporation; JUMBO SURPLUS CORPORATION, a Taiwanese Corporation; JOHN and JANE DOES I-X; and BLACK and WHITE CORPORATIONS/ PARTNERSHIPS I-X, <br><br> Defendants. | No. CV-04-1904-PHX-SMM <br><br> **ORDER** |

This case arises out of the death of Brooke Bauerlein ("Brooke"), who died of strangulation on May 15, 2003, when her neck was caught in a loop formed by multiple mini-blind pull cords joined together in a single tassel. The blind was manufactured by Defendant Jumbo Surplus Corporation ("Jumbo") and distributed by Defendant Lotus & Windoware, Inc. ("Lotus"). Defendant Equity Residential Properties Management Corporation ("Equity") owned the apartment complex in which the Bauerleins were

residing at the time of Brooke's death, as well as the apartment blinds.  In September 2004, Plaintiff Michael Bauerlein ("Michael") brought a wrongful death action on behalf of himself, Brooke's two-year-old sister Patricia Joelle Bauerlein ("Joelle"), and the statutory beneficiaries, including Brooke's mother, Shannon Bauerlein ("Shannon").  In October 2007, Lotus was dismissed from the case pursuant to a stipulation (Doc. 271).  Later, in August 2008, Equity was similarly dismissed, leaving only Jumbo to defend the action (Doc. 297).

The Clerk of Court entered default against Jumbo on May 9, 2008 (Doc. 287).  Plaintiffs subsequently filed for default judgment which the Court granted on June 6, 2008 (Doc. 290).  A hearing was scheduled to determine the amount of damages sustained by Plaintiffs as a result of Jumbo's actions.  Prior to the hearing, Plaintiffs submitted an Application for Damages (Doc. 293) as well as a Supplementation of Damages in Support of Default Judgment (Doc. 304).  At the hearing, the Court requested further briefing regarding damage awards in other Arizona wrongful death cases, and a Memorandum was submitted by Plaintiffs on December 19, 2008 (Doc. 308).  After considering the briefing submitted and Plaintiffs' counsel's representations at the hearing, the Court finds as follows.

**I.   Issuance of Default Judgment**

Early on in the litigation, Jumbo availed itself of this Court through making several appearances through counsel and filing a handful of pleadings.  In particular, Jumbo filed an Answer to Plaintiffs' Amended Complaint and a Cross Claim against Lotus on December 8, 2006 (Doc. 160); a Corporate Disclosure Statement also on December 8 (Doc. 161); an Amended Corporate Disclosure Statement on December 15, 2006 (Doc. 164); an Amended Answer on December 20, 2006 (Doc. 165); and a Motion to Amend/Correct Motion for Leave to Amend on March 27, 2007 (Doc. 190).  However, on May 7, 2007, the Court granted the withdrawal of Eric L. Samore, Thomas J. Lyman, III, and Molly A. Arranz from representing Jumbo (Doc. 200)**.**  The next day, Jumbo's last remaining counsel of record, James J. Osborne, also withdrew from the case (Doc. 202).

1 In granting the withdrawal of James Osborne, the Court ordered that "Defendant 2 Jumbo shall have thirty (30) days from the entry of this Order to file a Notice of 3 Appearance of its new counsel with the Court. Failure to secure counsel will result in the 4 Court striking Jumbo's answer and the entry of default against Jumbo." (Doc. 202) 5 Counsel failed to file a Notice of Appearance on behalf of Jumbo within the required 6 thirty-day time period. Because Jumbo is a corporation, under Licht v. America West 7 Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994), Jumbo was not permitted to appear in this 8 matter unless represented by counsel.

9 By having appeared before the Court and filed motions, Jumbo availed itself of the 10 Court and participated in this action. These actions demonstrate Jumbo was properly 11 served in accordance with Federal Rule of Civil Procedure 4. Once its counsel withdrew 12 in May of 2007, Jumbo chose not to retain new counsel or further defend against this 13 action. Consequently, the Clerk of Court entered default against Jumbo pursuant to Rule 14 55(a) (Doc. 287), and default judgment was later granted by the Court in an Order dated 15 June 6, 2008 (Doc. 290).

16 **II.    Damages Determination**

17 In Plaintiffs' Application for Damages, filed after the grant of default judgment by 18 the Court, Plaintiffs sought $3,000,000 in damages, exclusive of any set offs and/or 19 credits against Jumbo, to compensate Plaintiffs for emotional, funeral, death, and 20 business-related damages associated with Brooke's death (Doc. 293 ¶2). Plaintiffs' 21 support for their damages claim is detailed below.

22 **A.    Pain and Suffering**

23 In Michael's Affidavit accompanying the Application for Damages, he states that 24 Brooke's death had caused him to suffer "nightmares, headaches, nausea, depression, 25 sadness and has otherwise affected every aspect of [his] life." (Doc. 293, Aff. ¶22) In 26 addition, Michael claims he "became depressed and was unable to work effectively on my 27 business." (Id. ¶23) The depression, nightmares, and nausea continue to the present day. 28 (Id.¶¶ 24-25) Likewise, Shannon's Affidavit states that she was treated for depression,

post-traumatic stress disorder and panic disorders following Brooke's death (Doc 296, Aff. ¶16). Additionally, she claims she suffers from nightmares and sleeplessness and sometimes is "virtually housebound with grief." (Id.¶19)

### B. Loss of Consortium

Michael and Shannon also claim to have suffered a "loss of companionship, comfort, support, love, and affection from Brooke Lynne Bauerlein." (Doc. 293, Aff. ¶32; Doc. 296, Aff. ¶20) Furthermore, Michael states that Brooke was a "very caring and nurturing young girl and was the type of person whom [they] had hoped, realistically, would take care of me in my old age." (Doc. 293, Aff. ¶33)

### C. Medical, Funeral, and Burial Expenses

Michael claims $11,927.29 in medical and funeral bills in his Affidavit accompanying the Application of Damages (Doc. 293,Aff. ¶31). The medical expenses includes the cost of counseling for Michael following Brooke's death.

### D. Lost Business Profits

In the Damage Supplement submitted by Plaintiffs, it states that at the time of Brooke's death, Michael ran his own business called Michael's Magic (Doc. 304 ¶5). Following Brooke's death on May 15, 2003, Michael was forced to close the business (Id.) Plaintiffs allege that in the two years between the closing of Michael's Magic and the opening of another business, Michael lost approximately $60,000 in wages which they attribute to the death of Brooke (Id.¶6).

After considering the Affidavits and briefing provided by Plaintiffs, the Court finds a total award of $1,250,000 to be appropriate to compensate Plaintiffs for their emotional distress, funeral and medical expenses, and lost wages. This award will be split equally between Michael and Shannon Bauerlein.

### III. Punitive Damages

In their Second Amended Complaint, Plaintiff had also requested punitive damages (Doc. 47). However, the Court finds a punitive damage award is not warranted in this case. Punitive damages serve dual purposes, to punish the wrongdoer and to deter

1. similar conduct by others in the future. Under Arizona law, evidence of "gross
2. negligence" or "reckless disregard of the circumstances" is not sufficient for punitive
3. damages. Volz v. Coleman Co., 155 Ariz. 567, 570 (1987). Rather, the punitive damage
4. standard requires "something more" than gross negligence. Rawlings v. Apodaca, 151
5. Ariz. 149, 161 (1986). In Volz, the Supreme Court of Arizona articulated the meaning
6. behind this "something more" language. The Court explained, "The 'something more' is
7. the evil mind, which is satisfied by evidence that 'defendant's wrongful conduct was
8. motivated by spite, actual malice, or intent to defraud' or defendant's 'conscious and
9. deliberate disregard of the interest and rights of others.'" 155 Ariz. at 570 (quoting Gurule
10. v. Ill. Mut. Life and Casualty Co., 152 Ariz. 600, 602 (1987)). Punitive damages are not
11. warranted unless "defendant acted with a knowing or culpable state of mind, or
12. defendant's conduct was so egregious that an evil mind can be inferred." Gurule, 152
13. Ariz. at 601. In the absence of other evidence of an evil mind, an award of punitive
14. damages is not justified simply because a manufacturer continues to market a product.
15. Volz, 155 Ariz. at 570.
16.      Plaintiffs' Second Amended Complaint generally pleads its punitive/exemplary
17. damages claim, stating,

> At all material times, Defendants acted with an evil mind when they manufactured, constructed, designed, installed, prepared, assembled, tested, advertised, promised, rented, labeled and supplied said Apartment with window blinds in question and their component parts with reckless indifference to the consequences and other disregard for the safety of the decedent and Plaintiff.

(Doc. 47). However, there is little indication from the pleadings or facts of the case that Jumbo's conduct was motivated by spite, malice, or an intent to defraud or was caused by a conscious and deliberate disregard of other's rights. The Court does not find evidence of the "something more" that is needed for punitive damages, and thus, no punitive damages will be awarded to Plaintiffs.

- 5 -

### IV. Motion to Strike

Following the Court's granting of Plaintiff's Motion for Default Judgment against Jumbo, a Statement of Responsibility was received by the Court from Jumbo (Doc. 302). Plaintiffs filed a Motion to Strike this Statement of Responsibility (Doc. 305). After consideration of the arguments, the Court will grant this Motion. The Statement of Responsibility was filed ex parte by Jumbo. As a corporation, Jumbo can only be represented by counsel, and thus, any attempt by Jumbo to file documents without legal counsel is not permitted. Licht v. America West Airlines, 40 F.3d 1058, 1059 (9th Cir. 1994).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs are awarded $1,250,000 in damages, to be split equally between Michael and Shannon Bauerlein. Fed. R. Civ. P. 55(b).

**IT IS FURTHER ORDERED GRANTING** Plaintiff's Motion to Strike Doc. 302 (Doc. 305).

**IT IS FURTHER ORDERED STRIKING** Statement of Responsibility (Doc. 302).

**IT IS FURTHER ORDERED** that the Clerk of Court shall terminate this action.

DATED this 12th day of January, 2009.

_____
Stephen M. McNamee
United States District Judge